FRANKLIN AND OTHERS *against* W. I. AND S. ROBINSON.      *August* 29th.

The plaintiff and defendant were joint owners of a ship and cargo, on a voyage from *New-York* to *Batavia,* and back; and the defendant agreed to go out in the ship as *supercargo,* and the plaintiff agreed to pay him, as a compensation for the performance of the duties of a supercargo, the sum of 10,000 dollars, " out of the proceeds of any cargo the ship may bring from *Batavia,* o· to deliver him part of such cargo, to that amount, at the current market price, on its arrival at *New-York,* at his option." The ship, on her return voyage, from necessity, put into *St. Kitts,* where the vessel was condemned as unseaworthy, and sold with the cargo, and the proceeds remitted, by the supercargo, to *New-York.*

The defendant having caused 8,000 dollars of the sum stipulated to be paid to him by the agreement, to be insured, as his *commissions,* he recovered the amount, in a suit at law, of the underwriters, as for a total loss, on the ground that he had no remedy on the agreement against the plaintiff, his compensation being payable only out of a particular fund, which depended on a contingency that had never happened. On a bill filed against the defendant for an account, the defendant claimed to retain a certain sum for commissions and for services, in the sale and management of the concern; and it was held, that the defendant was not entitled to any allowance, on a *quantum meruit* for his services, merely on the ground that the contingency had never happened on which his specific compensation, for the same service, was to depend; nor was he entitled to any compensation for his services at *St. Kitts,* as he still acted in character of supercargo, and the sales there were substi-

tuted for a sale in *New-York*, on which, by his special agreement, he was to receive no commission. Joint owners, or partners, are not entitled to charge each other for services rendered in the care and management of the joint property, unless there is a special agreement for that purpose.

THE plaintiffs were joint owners, with the defendants, of the ship *Mary*, and her cargo, on a voyage from *New-York* to *Batavia*, and back. *W. I. Robinson*, one of the defendants, who were partners in trade, engaged to go out in the ship as *supercargo*, and an agreement was, thereupon, made and executed between the parties interested, as follows : " We, the subscribers, owners of the ship *Mary*, having engaged *William I. Robinson*, as supercargo, on her intended voyage from here to *Batavia*, and possibly to *Canton*, have agreed, in consideration of his undertaking and executing the duties of his trust, to pay him 10,000 dollars, out of the proceeds of any cargo the ship may bring from *Batavia*, or to deliver him part of such cargo, to that amount, at the current market price, on arrival here, at his option. But if the ship should proceed to *Canton*, and the letter of credit, with which he will be furnished, should be availing, we, in that case, agree to pay him 12,500 dollars, as above, otherwise, he is to receive no more than 10,000 dollars, the same as if the voyage out had terminated at *Batavia*. *New-York*, 21st of *March*, 1798." Signed by the owners, and by the defendants. On this agreement were the following endorsements. " I agree to undertake the management of the business committed to my care, as within, on the terms specified. *W. I. Robinson*."

" We agree, in consideration of the sum to be paid *William I. Robinson*, as herein specified, to take upon ourselves the trouble of the management and sale of the return cargo from *Batavia* or *Canton*, free of commission, subject to the direction of a majority of the owners of the ship *Mary*. *Wm. & S. Robinson*."

Before proceeding on the voyage, *William I. Robinson* procured insurance, to the amount of 8,000 dollars, on the com-

missions stipulated to be paid to him by the above agreement; and, afterwards, recovered the amount of the sum so insured against the insurers.

He proceeded on the voyage described, and arrived at *Batavia*, where a return cargo was purchased, with which the vessel set sail for *New-York*; and during her voyage back, was compelled, by stress of weather, to put into *St. Kitts*, where, on a survey, the ship was found unseaworthy, and condemned; and the laws of the island prohibiting the reshipment of the cargo in another vessel, it was sold there, under the direction of *William I. Robinson*, by merchants, who were paid a regular commission on the sale, and he received and remitted part of the proceeds to the defendants, who, afterwards, received other parts of the proceeds. The vessel was also sold at *St. Kitts*, and purchased in by *William I. Robinson*, for the account of the owners; and she was, afterwards, repaired, and brought to *New-York*, and there sold, and the money received by the defendants. The plaintiffs demanded of the defendants an account of the proceeds of the vessel and cargo, and a payment of the respective proportions to which they were entitled; but the defendants have refused to account and pay to the plaintiffs the proportions demanded, alleging their right to retain the sum of 10,000 dollars, the compensation agreed to be paid to *William I. Robinson*, according to the contract above mentioned.

The plaintiffs insisted, that this compensation was to be paid only on the event of the arrival of the vessel with the return cargo from *Batavia* to *New-York*; and that event having never happened, *William I. Robinson* was not entitled to that, nor any other sum; and, moreover, that he had recovered for a total loss, on the policy of insurance on the commissions specified in the contract. The bill prayed for an account; and the payment of the proportions of the vessel and cargo, to which the plaintiffs were entitled; and for relief.

1814.

FRANKLIN
v.
ROBINSON.

1814.

FRANKLIN
v.
ROBINSON.

The defendants, in their *answer*, admitted that the cargo was sold by merchants at *St. Kitts*, under the directions, and with the assistance of *William I. Robinson*; but they denied that the usual and customary commissions on such occasions were allowed or paid to the merchants.

The defendants alleged, that *William I. Robinson* advised the plaintiffs, by letter, of the situation of the vessel and cargo at *St. Kitts*, and staid there, for the purpose of effecting a sale of the property, collecting and securing the proceeds, and acting for the interests of the concerned, as circumstances might require. That the vessel was sold for 4,700 dollars, and purchased by *William I. Robinson*, for the benefit of the owners, and he charged on that sum the ordinary commission of 5 per cent. That it being impracticable to sell the cargo, without taking bills of exchange on *London*, he employed factors, who guarantied the payment of the bills for 2 1-2 per cent. That the usual commission at *St. Kitts*, was 5 per cent. on sales, and 7 1-2 per cent. with a guaranty of the debts. And the defendants claim the 5 per cent., for the agency of *William I. Robinson*, in the sale of the cargo.

The proceeds of the sales of cargo, amounted to 164,447 dollars, of which 28,112 dollars was invested in rum, sugar, and molasses, and sent to *New-York*; and the residue, in bills, remitted to *London*; on which the defendants claimed a commission of 2 1-2 per cent.

The defendants admit, that they sold the vessel at auction, and passed the net proceeds, deducting 2 1-2 per cent. commission, to the credit of the concern. They also charge *one half* per cent. commission, for effecting insurance of the cargo shipped from *St. Kitts* to *New-York*, and 2 1-2 per cent. on amount of duties paid by them.

The defendants further alleged, that a large proportion of the bills of exchange, so remitted to *London*, were protested for non-acceptance and non-payment; in consequence of which it became necessary for them to open a correspond-

ence with merchants at *St. Kitts* and *London*, in order to obtain payment of the bills; that in some instances, the bills were paid with damages, and in other cases, new bills were taken, which were again protested; that the defendants have collected 120,000 dollars of the bills, and 5,843 dollars still remain unpaid; and they have been, for eight years past, diligently engaged in effecting the payment of the said bills, maintaining a correspondence, by letters, with merchants and others, in *Europe* and the *West Indies*, for that purpose, &c.; and as a compensation for their services, they charge the concern, 4,000 dollars, or at the rate of 500 dollars per annum, for eight years: that they have rendered an account of the proceeds of the vessel and cargo to the plaintiffs, and have paid over to the plaintiffs their just and full proportions of all moneys which have come to their hands from the sale of the ship and cargo, reserving only, as security and indemnification of the payment of their claims against the concern, for the services rendered by them, in and about the management of their business, as above mentioned, the sum of 10,000 dollars, which they hold, and insist that they are entitled to hold until they are paid for their services as so claimed.

The cause being at issue, on a general replication, was brought to a hearing before his honour the late Chancellor, who, in *October* last, pronounced the following decree: "That the charge made by the defendants for compensation, or allowance, by way of salary, as the representatives and agents of the concern in the ship *Mary*, in the pleadings mentioned, for maintaining and conducting the correspondence mentioned in the answer, and, also, all allowance for commissions on the purchase and sale, by them, or either of them, of all, or any part of the goods and merchandise mentioned in the answer, as, also, on the sale of the ship *Mary*, mentioned in the pleadings, except as herein afterwards is directed, be wholly disallowed by the master in taking the account hereinafter directed; and it is further

ordered, adjudged, and decreed, that it be referred to one of the masters of this court, to take and state an account between the plaintiffs, respectively, and the defendants ; in which account the defendants shall be charged with all moneys received by the defendants, or either of them, as the agents or agent, factors or factor, or as part owners of the ship *Mary*, and her cargoes, mentioned in the pleadings, as well what they, or either of them, received on the sale of the ship *Mary*, as, also, what they, or either of them, may have received on account of the cargo of the ship on her return voyage from *Batavia*, and which have not been accounted for with the plaintiffs. And it is further ordered and decreed, that in taking the accounts, the defendants be allowed reasonable commissions for the sale and disposition of the return cargo of the ship *Mary*, at *St. Christophers*, as mentioned in the pleadings in this cause, the amount of which commissions, so to be allowed to the defendants by the master in taking the account, is to be ascertained by him in manner following, that is to say, by ascertaining what, according to the usage and custom of merchants in such cases, or otherwise, was earned by, or ought to be allowed unto the defendant, *William I. Robinson*, for his services as supercargo of the ship *Mary*, on her outward voyage from *New-York* to *Batavia*, and for disposing of the outward cargo of the ship *Mary*, at *Batavia*, and for procuring, and causing to be laden on board of the ship *Mary*, at *Batavia*, the return cargo, which was brought in her to, and sold or disposed of at *St. Christophers*, as in the pleadings and proofs mentioned, at the time the services were performed, as if no other services had been performed by him. And by ascertaining what, according to the custom of merchants, or the usages established at *St. Christophers* in such cases, or otherwise, was earned by, or ought to be allowed to the defendant, *William I. Robinson*, as commissions for his services as a factor or commission merchant, for selling the return cargo of the ship *Mary*, at *St. Christophers*, as in the pleadings

and proofs mentioned, at the time the services were performed, exclusive of guarantying the payment of the money on such sale. And, then, by crediting the defendants with such portion of the sum of 10,000 dollars as the services at *St. Christophers*, calculated as aforesaid, shall bear to the amount or value of the services rendered by the defendant, *William I. Robinson*, as supercargo of the ship in the voyage, before her arrival at *St. Christophers*, calculated as aforesaid. And that all other just allowances be made to the defendants, on taking the account, for actual disbursements for account of the plaintiffs (if any) in transacting the business at *St. Christophers* as aforesaid, or afterwards. That the master be authorized to examine the parties, or any of them, under oath, in taking the accounts, as he shall see fit and proper; and that the master may report specially, as to any of the matters which may be brought before him, on taking the accounts hereby ordered, if required by either party, and he shall think it reasonable so to do; and that all further directions be reserved until the coming in of the master's report."

1814.

FRANKLIN
v.
ROBINSON.

On the application of the plaintiffs, a rehearing was directed by the present Chancellor.

On the rehearing, the cause was argued by *Riggs* and *Boyd*, for the plaintiffs, and *Harison* and *T. L. Ogden*, for the defendants.

THE CHANCELLOR. It appears, by the contract between the parties, of the 21st of *February*, 1798, that 10,000 dollars were stipulated to be paid to the defendant, *W. I. Robinson*, in lieu of all compensation and commission, for his services as supercargo upon the voyage, and for the services of him, and his partner, *Sylvester Robinson*, for the management and sale of the return cargo. It further appears, that the defendant, *W. I. Robinson*, caused 8,000 dollars of this sum to be nsured, and that, upon the loss of the voyage, he sued the underwriters, and recovered. His right of recovery depend-

ed on the question, whether he was entitled to demand of the plaintiffs the sum stipulated by the contract; and it was decided, in the first instance, by the supreme court, and finally, on error, by the court in the last resort, (2 *Caines' Rep.* 357. 1 *Johns. Rep.* 616.,) that he had no remedy upon the contract with the plaintiffs, because the money was made payable out of a specified fund, and that fund depended on a contingency which had never happened. We are, then, to consider it as the settled law of this case, that the defendants cannot set up a claim under the contract; and the point then is, whether they are entitled to a *quantum meruit* for their services, or for any part thereof, precisely as if no agreement had ever been made.

It is evident, from the variation in the accounts, rendered by the defendant, *W. I. Robinson*, that he rested his demand for compensation, for his services at *St. Kitts*, entirely upon his contract. In his first account, (exhibit No. 5,) he charges the plaintiffs with the 10,000 dollars. This was prior to his recovery against the insurers, and when his claim against them was resisted, on the ground that he had not lost his claim under the contract. Afterwards, in his account, (exhibit No. 6,) and which was exhibited after the recovery against the underwriters, he omits this charge altogether; and this fact is of great force to show the defendant's own sense of the foundation of his claim. But without considering this waiver as absolutely binding, I cannot find any just principle upon which the claim for commissions, set up by the defendants, can be admitted.

It seems to be inconsistent with the object and intention of the parties, in making the contract, to allow the defendants to recover on a *quantum meruit*, merely because the contingency had not occurred on which the extraordinary and specific allowance for the same services was made to depend. This would be giving the defendants an undue advantage, not consistent with equality and justice between the parties. The benefit of the contingency may have

been an inducement for the allowance. The parties to the contract were joint owners of the ship and cargo ; and the defendant, *W. I. Robinson*, in his character of *part owner*, was not entitled to charge for his services, except up-on the ground of the special agreement. I know of no case which entitles one partner to such an allowance against another, without an agreement. The case of *Thornton* v. *Proctor*, (1 *Anst.* 94.,) evidently proceeds upon this prin-ciple. Each joint owner, in taking care of the joint proper-ty, is taking care of his own interest, and the law never un-dertakes to measure and settle, between partners, their va-rious and unequal services bestowed on the joint business. This must be left to be regulated by contract. But the de-fendant, *W. I. Robinson*, bestowed his services as *super-cargo*, in which trust and character he had been placed by the whole concern, and, in that character, he can look only to the agreement. His duty, as supercargo, continued at *St. Kitts*, and until the cargo, entrusted to his charge, or the proceeds of it, had arrived at *New-York ;* and for the pur-pose of compensation, the sales at *St. Kitts* may be consi-dered as substituted for the sales at *New-York*, and they were to be made free of commission.

This case must, therefore, be referred to a master, to take and state an account between the parties, under the direc-tions contained in the decretal order of the 14th of *Oc-tober* last, except that, in addition to the claims of the de-fendants, or either of them, disallowed by that order, the claim for commissions on the sale and disposition of the re-turn cargo of the ship *Mary*, at *St. Christophers*, be also disallowed ; and that all further directions be reserved until the coming in of the master's report.