Ruger, Ch. J.
 

 The object of this proceeding was to obtain certain allowances oat of a fund in court for the plaintiff’s services and expenses in prosecuting certain litigations resulting in the creation of such fund. The fund was procured by the prosecution of the lessees of the Erie & Genesee Valley Railroad upon a covenant in its lease whereby they were obligated to pay the amount of certain bonds at maturity and the annual interest thereon to the holders, who were secured by a mortgage upon such road executed to the plaintiff and two others, as trustees for •their benefit Both parties are here asking for the distribution of this fund by the court if it has the power to order distribution. We think there is no doubt as to the authority of the court over the fund. Eor the purposes of this discussion the plaintiff may be regárded as the sole trustee under the mortgage, inasmuch as one of such trustees had died before any litigation ensued, and the other took no active part in administering the trust. The bondholders, who were permitted by the court to litigate the question, opposed the granting of any allowances from the fund. The special term ordered such allowances to be made and the general term affirmed the order.
 

 The evidence tended to show that the plaintiff had incurred large liabilities, made large expenditures and performed valuable services in the prosecution of the several actions which produced the fund in dispute, and was industriously engaged for the period of nearly thirteen years in pushing them to a successful conclusion. The amount and value of such expenses and services have been fixed by the courts below upon contradictory evidence, and we are not therefore at liberty to review their conclusions upon the facts. The sum allowed was quite large, amounting to about twenty-five per cent of the sum recovered ; but it must be borne in mind that without the action of the plaintiff there would have been no fund to distribute, and that for a long period of time, without assistance from the beneficiaries of the fund, and against an energetic and untiring opposition, he resolutely prosecuted the actions which resulted in recovering the sum of upwards of $50,000, now lying on deposit in the Metropolian Trust Company of New York to the credit of the trustees and subject to the order of the court.
 

 It is a cardinal principle in the disposition of trust estates that the trust fund shall bear the expenses of its administration, and that one who successfully conducts a litigation
 
 in autre droit
 
 for the benefit of a fund shall be protected in the distribution of such fund for the expenses necessarily incurred by him in the performance of his duty.
 
 In re
 
 Holden, 126 N. Y., 589; 38 St. Rep., 504;
 
 Trustees
 
 v. Greenough, 105 U. S., 527.
 

 It is laid down as an elementary rule in Perry on Trusts, that “ Trustees have an inherent equitable right to be reimbursed all expenses which they reasonably incur in the execution of the trust, and it is immaterial that there are no provisions for such
 
 *195
 
 expenses in the instrument of trust If a person undertakes an office for another in relation to property, he has a natural right to be reimbursed all the money necessarily expended in the performance of the duty.” Lewin on Trusts, 557 ; Perry on Trusts, § 910. This right is extended not only to necessary traveling expenses, but to all reasonable fees paid for legal advice in the discharge of his duties, and in most of the states includes compensation for time, labor and trouble. Perry on Trusts. §§ 910, 917, 918.
 

 It was held in
 
 Wetmore
 
 v. Parker, 52 N. Y., 450, that this court has decided in two cases,
 
 Downing
 
 v.
 
 Marshall
 
 and
 
 De Courval
 
 v.
 
 Ray,
 
 37 N. Y., 380, that the special term has power to make allowances to trustees and others acting in a fiduciary capacity for all expenses necessarily incurred in the faithful performance of their duties, including counsel fees. In
 
 Downing
 
 v.
 
 Marshall, supra,
 
 the court said “ that persons acting
 
 in autre droit,
 
 as executors, administrators, trustees, guardians, receivers, etc., are upon a faithful execution of their trusts to be indemnified out of the trust property for all expenses necessarily incurred in the faithful performance of their duties.” There can be no reasonable doubt but that the general rule is that trustees, and others acting in a fiduciary capacity, are entitled to reasonable allowances for costs and expenses, incurred in the course of the performance of their duties, out of a fund which has been secured or protected by their efforts.
 

 It is claimed, however, that the plaintiff was not a trustee for the bondholders and in securing the fund in question was not acting for the interest of the bondholders, but was engaged in protecting his own personal interest We do not think that this claim is supported by the facts of this case. The proof shows that the plaintiff and two other persons were appointed trustees under a mortgage made by the Erie & Genesee Valley Railroad Company in 1871, to secure bonds to the extent of one hundred and twenty thousand dollars, issued and negotiated for the purpose of obtaining money for the construction of its railroad. It does not appear that the plaintiff had any other interest in such railroad than as trustee under such ° mortgage, until the circumstances, hereinafter related, took place, which gave him a certain interest therein. On November 1, 1871, the railroad company executed a lease of the road to him for the unexpired term of its charter, upon the consideration that he should, among other things, pay the annual interest accruing on said bonds, and also the principal sum of said bonds at the maturity thereof. It was further-provided in the lease that upon the payment of such bonds by the said plaintiff,
 
 or the Erie Railway Company,
 
 the annual rent of such railway should be reduced to one dollar and taxes. On the 8th day of November, thereafter, the plaintiff executed a lease of the railroad to the Erie Railway Company, upon the agreement of that company that it should make the payments and perform the covenants agreed to be made and performed by him and thereupon the Erie Bailway Company entered into the pas’ session of such railroad and performed the covenants made by it
 
 *196
 
 and paid the interest on such bonds until the year 1874, when it defaulted in such payment This default continued for four years, and no effort seems to have been made by any one except the plaintiff to compel the performance by the Erie Eailway Company of its obligations. In the meanwhile that company had become insolvent, and its property went into the hands of a receiver. At this time the bondholders of the Genesee Yalley Eailroad had the security, not only of the original mortgage, but also the covenants of the plaintiff and the Erie Eailway Company to pay the principal and interest of this claim. In 1877 an action to foreclose such.mortgage was begun by the trustees against the mortgagor, L. 0. Woodruff, individually, and the successors to the Erie Eailway Company. This action was defended by the successors of the Erie Eailway Company, and resulted, after many years of litigation, in a judgment for the sale of the property mortgaged and the recovery of the deficiencies against the mortgagors and Woodruff.
 

 The sale resulted in a deficiency. In 1877 Woodruff commenced an action in the supreme court in his individual name against the Erie Railway Company, H. J. Jewett, its receiver, and a number of other individuals and corporations, to compel the payment by them to the holders of the bonds of the unpaid instalments of interest on these railroad bonds. This action was predicated upon the plaintiff’s equitable right to compel the parties primarily liable to make such payment for the protection of their surety. The action resulted in 1885, alter a long and harrassing litigation, in a judgment fixing the payment of such interest upon the receiver of the Erie Railway Company. In the meanwliile the property of the Erie Railway Company had passed out of its-hands and those of its receiver into the possession of the New York, Lake Erie & Western Railroad Company, and a further action became necessary to reach the funds applicable to the payment of the judgment recovered in the hands of the latter company. Woodruff had become insolvent in 1884; but in 1886 he commenced another action in his individual name against the New York, Lake Erie & Western Railroad Company to subject the pi'operty in its hands received from the Erie Railway Company and its receiver to the payment of the judgment theretofore recovered against the receiver of the Erie Railway Company. This action resulted in a judgment on January 11, 1890, under which the fund involved in this proceeding was eventually placed in bank to the credit of the trustees of the mortgage.
 

 If the actions above referred to had been prosecuted in the name of Mr. Woodruff as trustee, there could have been no question made but that he would have been entitled to an allowance for his costs, counsel fees and expenses in prosecuting such actions; but, because he was individually liable for the payment of such interest coupons and prosecuted such actions individually, it is claimed that he was not in a strict sense a trustee, or acting in a fiduciary capacity, and is not, therefore, entitled to the allowances usually made in such cases.
 

 We are of the opinion that this view of the character in which
 
 *197
 
 Mr. Woodruff acted in prosecuting such actions is too narrow and technical to be supported in a court of equity. While Mr. Wood-ruff might, by virtue of the covenant in his case, have been liable to pay the annual interest on the coupon bonds, it seems to have been a liability voluntarily assumed by him for the benefit of the bondholders alone. It was contemplated by both the Erie & Grenesee Valley Railroad Company and the plaintiff, when he took the lease of their road, that he should transfer it on the same terms assumed by him to the Erie Railway Company, who were to become primarily liable for the payment of the bonded debt, and the interest thereon. For some purpose, which is not disclosed, it was thought best that the lease should pass through him; but it is uncontradicted that he assumed this liability without any consideration, or the prospect of any personal benefit, in the interest of and for the protection of the bondholders. Whether, as the trustee of such bondholders, he thought it his duty to promote their interests by securing to them the payment of their bonds and interest by a large railroad corporation like the Erie Railway Company we do not know, but that he voluntarily stepped into the position that made him liable, for the purpose of providing an apparently responsible corporation as the paymaster of their bonds, is evident from the whole case. That he was not working to protect his individual interest in prosecuting the actions referred to is also apparent from the fact that when the general term of the supreme court in 1882 adjudged that the lease to him was
 
 ultra vires,
 
 and void, and thus, apparently, released him from all liability for the payment of rent, he still continued the prosecution of that action, and obtained the decision of this court reversing that judgment, and holding that such lease was valid, and thus re-established his own liability thereunder.
 

 It further appears that in 1884 and long before the litigation resulting in the creation of the fund ended, Mr. Woodruff had become insolvent and the question whether he was liable upon his-lease to pay rent or not must have become a matter of comparative indifference to him. The last action resulting in the payment of the money composing the fund was commenced in 1887, long after he became insolvent
 

 Neither do we think because the actions were commenced in the name of Woodruff individually, instead of as trustee, that it was necessarily shown that he was not acting as a trustee in prosecuting them. It is unquestionable that, as such trustee, he was under an obligation to protect the fund in his hands from waste and destruction and secure the annual income therefrom for the benefit of the bondholders. In pursuance of his duty in this respect, after default in the payment of interest, he prosecuted the foreclosure of the mortgage; but this remedy being likely to prove inadequate, he also commenced the action against the receiver to recover the rentals of the railroad property due from him. It was probably within the power of the bondholders, also, to maintain actions against the Erie Railway Company and its receiver for this money; but they, in fact, made no effort to do so; and it would evidently be inconvenient and expensive on account
 
 *198
 
 of the large number' of bondholders interested, the difficulty of securing united action on their part, the necessity of a large number of separate actions, and the doubtful nature of the remedy, to pursue that remedy. If there was any other remedy -in the power of the trustee to pursue and protect the interests of those who were the beneficiaries of the fund in his charge it was his duty to use it. Fortunately the remedy was in the trustee’s power, to commence an action which would produce the same result as would have followed actions by the bondholders. That action he did commence and asked, as the relief to be granted, that the amount of such rents should be paid into his hands, as trustee for the bondholders, by the Erie Railway Company. Does it -lie in the mouths of these bondholders, who accept the benefit of his action, to say that he was not acting in that respect as their trustee, because he was personally liable for the payment of such rentals? As we have seen, Woodruff was insolvent for the larger part of the time that this litigation was going on and could have been moved in a very small degree by motives of self interest.
 

 We think that in the proceeding, to bring this fund into the possession of the trustees for the benefit of the bondholders, he was performing a trust duty, and is entitled to the benefit of the rule which protects trustees while engaged in the performance of such duties. We "think that this case comes within the meaning and spirit of the decision in the case of
 
 Trustees
 
 v. Greenough,
 
 supra.
 
 In that case one Yose was the holder of a large amount of the bonds of the Florida Railroad Company, and, upon allegations that the fund provided for the payment of such bonds was being dissipated and squandered through the dishonesty and incapacity of the trustees and others having its administration in charge, brought an action in his own name for his own benefit and that of other holders of such bonds. After a long and expensive litigation the action resulted in the recovery and preservation of a large part of the fund .and the accumulation of a large sum in money in the hands of the court for distribution. Yose claimed that he should be allowed for the costs, expenses and counsel fees incurred and expended by him, and services rendered in the prosecution of such action. It was claimed that Yose was not before the court in the character of a trustee, and was not, therefore, entitled to reimbursement of his expenses. It was said by Judge Bradley, in delivering the opinion of the court, that “ if the complainant is not a trustee, he has, at least, acted the part of a trustee in relation to the common interest. He may be said to have saved the fund for the
 
 cestuis que
 
 trust, and to have secured its proper application to their use.” He further says : “It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority that where one of many parties, having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction, and to restore it to the purposes of the trust, he is entitled to reimbursement either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts.”
 

 
 *199
 
 Within the doctrine of this case, we think that the plaintiff was entitled to recover the necessary costs and expenses which he was put to in securing the fund in question.
 

 A different question, however, arises as to the plaintiff’s claim for compensation for his services. It was held in
 
 Lent
 
 v.
 
 Howard,
 
 89 N. Y., 169, that “ the principle is, that for the personal services of an executor or trustee in the discharge of executorial duties, or those which pertain to his trust, the commissions allowed by law are deemed to be a full equivalentbut in that case the executor had carried on and managed a number of large farms for agricultural purposes for a series of years, and the court held that such service was not included in his duty as an executor, and it, therefore, sanctioned an allowance for his compensation for such services. See also
 
 Greenough’s
 
 case,
 
 supra.
 

 We think the trustee in this case should have been allowed compensation for his services at the rate usually awarded to executors and administrators. Inasmuch as the sum in the hands of the trustee for distribution is found by the court and the commissions thereon can be accurately computed, we do not think it is necessary to have a rehearing of the case for the purpose of settling the amount. The percentage allowed to executors and administrators on the sum received here would amount to $695.85, and the allowance of such a sum is in accordance with the rule recently adopted as to the compensation of persons acting in a fiduciary capacity.
 

 The order appealed from is therefore modified by deducting from the item allowed for personal services the sum of $1,833.41, and, as modified, affirmed, without costs to either party in this court.
 

 Andrews, Finch and Gray, JJ., concur; Earl, Peckham and O’Brien, JJ., dissent.