CENTRAL TRUST COMPANY of New York, Respondent, *v.* NEW YORK EQUIPMENT COMPANY, Appellant.

*Subrogation — notes secured by a common collateral — right to enforce an accounting for the collaterals — waiver of an objection to a defect of parties — no right of compensation for services between joint owners of personal property.*

An equipment company made a conditional sale of certain rolling stock to a railroad company under an agreement that if the railroad company defaulted in the payment of its notes, given for the purchase price, the equipment company might seize the rolling stock, sell it and apply the avails to the payment of the notes, or if insufficient to pay them in full should apply the proceeds to their *pro rata* payment, or, in the alternative, it might rescind the agreement, take possession of the property and hold it as its own.

The United States Rolling Stock Company furnished to the equipment company the cars required by the railroad company, received some of the notes of the railroad company in payment, and also a written agreement assigning to the United States Rolling Stock Company a two-fifths interest in all the railroad equipment, and in all rights and remedies enjoyed by the equipment company. The notes were not paid and the equipment company seized the rolling stock, sold it and applied the avails to the payment of the debt.

The United States Rolling Stock Company assigned its notes to a trust company for value, and the latter brought an action to compel the equipment company to account for the rolling stock seized and sold by it.

*Held*, that upon the transfer of the notes, by the rolling stock company to the trust company, the collateral rights and securities held by its transferror, the United States Rolling Stock Company, passed in equity by subrogation to the trust company and entitled the latter to demand an account of the equipment company;

That the objection that the rolling stock company was a necessary party to the action, not having been taken by demurrer or answer, was waived;

That, in the absence of a contract that compensation shall be paid, joint owners of property, or persons jointly interested in property, cannot recover of each other compensation for services rendered in caring for it and converting it into money.

APPEAL by the defendant, the New York Equipment Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 13th day of November, 1894, upon the report of a referee, with notice of an intention to bring up for review upon the appeal an interlocutory judgment entered in said clerk's office on the 26th day of February, 1894.

This action was brought to compel the defendant to account for two-fifths of the avails of certain property which it had taken, sold and converted into money.

March 28, 1889, the defendant entered into a written contract with the San Diego and Eastern Terminal Railway Company, by which the former delivered to the latter two locomotives and sixteen railway cars. The agreement is in form a lease in which the defendant is called "lessor" and the railway company "lessee," but in effect it is a conditional contract of sale of the property. For this property the railway company agreed to pay $35,000, by thirty-five promissory notes executed by it March 28, 1889, for $1,000 each, numbered from one to thirty-five inclusive, the first to become due July 1, 1889, and the last May 1, 1892. The defendant delivered the locomotives and cars to the railway company and received from it thirty-five notes, all alike except the number and date of payment. The following is a copy of No. 2:

"No. 2.

"$1,000.                  SAN DIEGO, CALIFORNIA, *March* 28, '89.

"On the first day of August, 1889, we promise to pay to the New York Equipment Company, or bearer, one thousand dollars, with interest thereon at 6 per cent per annum from May 1st, 1889, for rental of rolling stock under contract of lease of even date herewith, payable at the office of said New York Equipment Company in the city of New York.

"SAN DIEGO & EASTERN TERMINAL RAILWAY CO.,

"By WM. H. CARLSON,

"*President.*"

By the terms of the contract, upon the payment of all the notes and the further sum of five dollars, the title of the property was to vest absolutely in the railway company. The contract contains the following provisions:

" In case the said lessee shall make default in payment of any of the notes aforesaid, or any part thereof, according to their tenor on the day when the same may be payable, or in case the lessee shall violate this agreement in any respect whatsoever, this lease shall immediately cease and determine, and lessee shall and hereby agrees to deliver up the aforesaid equipment and rolling stock to the lessor as aforesaid, and the sums paid and payable upon all the aforesaid notes up to the date of such surrender and delivery shall be deemed an equivalent for the use of said property up to such date, and shall be retained as such by the lessor.

" Said lessee further agrees that in case of any such default, the lessor or its assigns may seize said equipment and rolling stock wherever the same may be found, and resume possession thereof, free from every legal and equitable claim of said lessee of, in or to said equipment or rolling stock, and said lessee agrees that it will hold said lessor or its assigns harmless from and pay any and all debts, demands or liabilities whatever which said lessor may incur by reason of any such seizure.

" In case said equipment and rolling stock shall be delivered up by said lessee to said lessor or its assigns as aforesaid by reason of such default, the said lessor or its assigns shall have the right to retain for its own use and benefit the said equipment and rolling stock so delivered up or seized, or, at its option, to sell the same on ten days' notice to the lessee at public or private sale, and to apply the proceeds to the payment of any and all of said notes representing installments of rent of said equipment and rolling stock for the whole of said term of thirty-six months, whether said installments shall then have fallen due or not, including interest at six per cent; and notwithstanding that said rolling stock be so taken possession of and removed and sold prior to the expiration of this lease.

" In case the proceeds of such sale shall not be sufficient to pay all of said notes in full, such proceeds shall be applied to the *pro rata* payment of all of said notes then outstanding and unpaid, without preference or priority and irrespective of the dates of their matur-

ity, and said lessee shall be liable to pay the deficiency to the lessor or its assigns on demand until all said notes shall have been paid in full; but if the proceeds shall be more than sufficient to pay all such unpaid notes representing installments of rent, with interest and expenses, then the surplus shall be paid to the lessee."

The United States Rolling Stock Company furnished the sixteen cars delivered by the defendant to the railway company, and in payment thereof received from the defendant fourteen of said notes, to wit: No. 2, due August 1, 1889; No. 4, due October 1, 1889; No. 7, due January 1, 1890; No. 9, due March 1, 1890; No. 12, due June 1, 1890; No. 14, due August 1, 1890; No. 17, due November 1, 1890; No. 19, due January 1, 1891; No. 22, due April 1, 1891; No. 24, due June 1, 1891; No. 27, due September 1, 1891; No. 29, due November 1, 1891; No. 32, due February 1, 1892; No. 34, due April 1, 1892.

These fourteen notes represented two-fifths of the contract price for the locomotives and cars. To secure the United States Rolling Stock Company the defendant, by a written instrument, dated June 14, 1889, assigned to the rolling stock company and its assigns " an undivided two-fifths interest of all its right, title and interest thereunder (the contract of March 28, 1889), and in and to the railroad equipment and rolling stock therein described, together with the rights, remedies and incidents thereunto belonging."

June 20, 1889, the United States Rolling Stock Company transferred said fourteen notes, all payable to bearer, to the plaintiff for a valuable consideration. The railway company made default in the payment of all the notes which fell due on and before January 1, 1891, and on or about January 9, 1891, the defendant, pursuant to the terms of the contract, took possession of the locomotives and cars and afterwards sold a portion of them and received the proceeds of the sale. Before this action was begun the railway company defaulted on the remainder of the notes falling due after January 1, 1891. The defendant refusing to account for the avails derived from the sale of the property, this action was begun January 17, 1893, to compel an accounting.

The foregoing facts are alleged in the complaint, are not denied in the answer, and have been found by the referee. As a defense, it is alleged that the defendant, in taking possession and selling the

property, acted with the consent of the United States Rolling Stock Company, upon an agreement that the defendant should be reimbursed for all expenses incurred and paid out of the avails of the sale for its services in taking possession of and selling the property.

By a stipulation the action was referred to a referee to hear and determine, and by the interlocutory judgment entered on his report it was adjudged that the defendant account for the property taken. By the final judgment the defendant was allowed all of its expenses in taking possession, caring for and selling the property, which, being deducted from the avails of the sale, left in its hands $6,283.95, two-fifths of which, $2,513.58, the defendant was adjudged to pay to the plaintiff, together with the costs of the action.

*Philip G. Bartlett*, for the appellant.

*Henry W. Calhoun*, for the respondent.

FOLLETT, J. :

The defendant alleges four grounds for the reversal of the judgments : (1) That the plaintiff failed to show that defendant was liable to account ; (2) that the United States Rolling Stock Company is a necessary party to the action ; (3) that the referee erred in refusing to allow the defendant compensation for its services in taking possession of, caring for and selling the property ; (4) that the referee erred in admitting evidence on the accounting.

The contract was, in legal effect, a conditional sale of the property, by the terms of which the defendant, in case the railway company defaulted on any of the thirty five notes, had the right to seize the property, sell it, and apply the avails in payment of the notes, or it had the right to rescind the contract, take possession of the property and hold it as its own. The defendant did not resort to the second, but to the first alternative, and elected to affirm the contract, treating the property as security for the payment of the notes, and it is alleged in the answer that this was done by an agreement with the United States Rolling Stock Company. Had that company remained the owner of the fourteen notes which were transferred to it by the defendant, it would have had the right to compel the defendant to

account and pay over two-fifths of the net avails of all sums realized on a sale of the locomotives and cars. That right was created and secured by the assignment by the defendant to the United States Rolling Stock Company of June 14, 1889. Upon the transfer of these notes to this plaintiff the securities held by the transferror as collateral for their payment passed in equity to the plaintiff, who became subrogated by operation of law to the rights of the transferror, and it has the same right to compel the defendant to account that the United States Rolling Stock Company would have had, had it not transferred the notes. It is argued in behalf of the defendant that it is not liable to account because, under the contract, it remained the absolute owner of the property. If the defendant, instead of affirming the sale, had elected to rescind it and take the property into its possession as its own, a different question would have arisen; but even in that case it is difficult to see how, under its assignment of June 14, 1889, it could have escaped liability to account for two-fifths of its value. Again, it is not alleged in the answer that the defendant elected to disaffirm the sale and take possession of the property and hold it as its own, and it is too late, after having substantially alleged the contrary, to take this position on appeal.

The question that the United States Rolling Stock Company is a necessary party to the action cannot be raised for the first time on appeal. This objection is waived, unless it is taken by demurrer or answer. (Code Civ. Proc. § 499.) The objection was not taken, by answer or demurrer, on the trial nor on the accounting before the referee, and it is too late to take it on appeal. Had it appeared on the trial that it was necessary that other parties should be brought in, in order to determine the action, the court might, in its discretion, have ordered the case to stand over and the necessary parties brought in. But there is no such necessity in this case. The United States Rolling Stock Company is not shown to have any interest in this action. It had transferred all of its interest in these notes to this plaintiff, which is subrogated to all the United States Rolling Stock Company's rights in the contract, and it is not a necessary party to the action.

The defendant claims $3,000 for its services in taking possession of, caring for and selling the property. The referee found that the

# CENTRAL TRUST CO. *v.* N. Y. EQUIPMENT CO. 427

plaintiff had not agreed to compensate the defendant for such services. In the absence of a contract that compensation for services shall be paid, joint owners of property, or persons jointly interested in property, cannot recover of each other compensation for services rendered in caring for it, and converting it into money. (*Franklin* v. *Robinson*, 1 Johns. Ch. 157; *Trustees* v. *Greenough*, 105 U. S. 527; *Raun* v. *Reynolds*, 18 Cal. 276; Freem. Coten. § 260.)

The case of *Woodruff* v. *N. Y., L. E. & W. R. R. Co.* (129 N. Y. 27) is cited as holding a contrary doctrine. It is expressly stated in that case that the plaintiff, who was compensated for his services, was not acting in his own interest, but exclusively as a trustee for and in the interest of bondholders. (129 N. Y. 31, 32.) Again, on looking into the record we fail to find any evidence of the extent of the services performed by the defendant, or of their value, beyond the services performed by its employee, whose salary and expenses were allowed by the referee.

Four of the six exceptions taken to the admission of evidence are to the testimony of William C. Lane in respect to the value of services for selling railroad rolling stock. Having held that under the evidence the defendant is not entitled to compensation for such services, the testimony as to the value of like services becomes entirely immaterial, and no harm was done to the defendant by its admission. The other two exceptions are to the ruling of the referee that the plaintiff's vice-president might testify that the plaintiff never assented to any payment or charges for services by the defendant. This was clearly competent.

We think that no error was committed by the learned referee, and that the judgments are right, and should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgments affirmed, with costs.